JOSEPH URSCH, a Minor, by Next Friend, Respondent, v. HENRY HEIER, Appellant.

St. Louis Court of Appeals.   Opinion Filed May 2, 1922.

1. **MASTER AND SERVANT:** Negligence: Automobiles: Owner's Liability for Chauffeur's Negligence: Chauffeur Must be Acting Within Scope of Employment: Presumptions. In an action to recover for personal injuries alleged to have been sustained by being struck by an automobile belonging to defendant and driven by his chauffeur, where the evidence shows that the chauffeur driving defendant's automobile at the time of the accident was in the employ of the defendant, this raises a presumption that the chauffeur was acting within the scope of his employment, and makes a prima-

210 M. A.—9

facie case against the owner resting upon the presumption; but such presumption takes flight upon the appearance of real facts to the contrary.

2. ——: ——: ——: ——: **Owner Not Liable for Negligence of Chauffeur on Personal Errand.** Where the owner of an automobile directed his chauffeur to deliver a box at a cemetery and the chauffeur did not return from the cemetery and put up the machine in the garage as his duties to the master required, but, taking relatives with him, started in the opposite direction and had gone beyond the city limits of the city and was already on his way to a farm some three miles away on a personal errand when the accident occurred, *held* as a matter of law that the chauffeur had departed from the scope of his employment, and hence the rule of *respondeat superior* did not apply.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. Franklin Ferriss,* Judge.

REVERSED.

*Robert C. Powell* for appellant.

(1) While in an action for injuries from a collision with an automobile, proof that the automobile was being operated by defendant's regularly employed chauffeur raises a presumption that the chauffeur was acting within the scope of his employment, yet when there is positive proof to the contrary and that such chauffeur was engaged on a mission purely of his own, that presumption takes flight, and unless plaintiff introduces evidence (in rebuttal) tending to disprove defendant's postive testimony to this effect, it then becomes the duty of the court to declare as a matter of law that the plaintiff cannot recover. No evidence was introduced by plaintiff in this case tending to disprove defendant's positive evidence that the chauffeur was on a mission purely of his own, and hence the court erred in refusing defendant's instruction offered at the close of all the testimony, declaring as a matter of law that the plaintiff could not recover. Guthrie v. Holmes, 272 Mo. 215; Vallery v. Heese Bldg. Material Co., 211 S. W. 95;

Kilroy v. Crane Agency Co., 203 Mo. App. 302; Gordon v. Bleek Automobile Co., 233 S. W. 265. (2) No admission of any kind was testified to as having been made by defendant that the chauffeur was on his master's business or acting within the scope of his employment when the accident occurred, creating no exception to the rule as set out in point 1. Pinteardd v. Hosch, 233 S. W. 81; Latham v. Hosch, 233 S. W. 84. (3) In spite of the law, as set out in points 1 and 2, supra, the court sent the case to the jury, and, having done so, instruction No. 1 for plaintiff should not have been given, as it has the tendency of assuming that at the time of the accident the defendant was actually acting within the scope of his employment. This instruction should have been refused and defendant's instruction No. 2, which was refused by the court, should have been given. (4) No evidence of any kind appearing that the chauffeur at the time of the accident was engaged in his master's business or within the scope of his employment, but, on the other hand, direct evidence appearing to the contrary, to-wit, that the chauffeur was on a mission purely of his own, without the knowledge, consent or permission of his employer, in view of instruction No. 4 given on behalf of defendant, without objection by plaintiff, the jury was bound to find for the defendant, and, in failing so to do, evidenced decided bias and prejudice in plaintiff's favor. (5) The physical facts, as testified to by plaintiff, show the impossibility of the accident occurring as he described it, and for this further reason the verdict is the result of bias and prejudice of the jury in his favor. (6) Defendant's instruction No. 3 refused by the court should have been given, as it correctly states the law. This case, as the evidence shows, is probably the result of either the plaintiff's negligence, as testified to by the absolutely disinterested witness, Dr. Stewart, or the result of an unavoidable accident. At any rate, inasmuch as the case was sent to the jury, defendant had the right to have the jury consider the question as to whether or not it was the result of an unavoid-

able accident, and his instruction No. 4, refused by the court, should have been given to let the jury so decide.

*Charles Fensky* and *Charles E. Morrow* for respondent.

(1) The admission of the defendant that the plaintiff was injured by his chauffeur who was working for him at the time and the admission of the chauffeur brought out by defendant on cross-examination of Mrs. Ursch that he was working for the defendant at the time, are admissions of facts. They do not rest upon presumptions of law and cannot be restricted to the fact that the chauffeur was simply in the general employ of the defendant at the time. They are evidence that the defendant's chauffeur was in his service engaged in his business and was acting within the scope of his employment at the time the plaintiff was injured. Pinteardd v. Hosch, 233 S. W. 81. (2) The construction of the admission of defendant offered in evidence was for the jury. Cafferatta v. Cafferatta, 23 Mo. 235; Sparr v. Wellman, 11 Mo. 230; 22 C. J. 417. The jury had a right to give credence to that part of the admission only which is against the interest of the defendant. Hormann v. Wirtel, 59 Mo. App. 646. (3) It is not essential to constitute the admission of defendant evidence against him that he should have personal knowledge of the acts admitted. Sparr v. Wellman, 11 Mo. 230; Erskine v. Loewenstein, 82 Mo. 308; Brookfield v. Drury College, 139 Mo. App. 339. (4) There is no question that the chauffeur was in the general employ of the defendant and had been sent out on his business. The place where plaintiff was injured was only five or six blocks from the place where he claimed he had delivered the coffin box and the deviation was so slight in point of distance and time and the place where the chauffeur claims he was going for the pears for his own use was so close and the thing he claims he intended to do for his own benefit was so slight that they were mere incidents in the line of his

service of defendant and did not exonerate the defendant from his negligence. Guthrie v. Holmes, 272 Mo. 215. (5) Defendant's instruction No. 3 was properly refused. The prior contributory negligence of plaintiff, if any, is presupposed in a last chance case. Klockenbrink v. Railroad, 172 Mo. 678. Even if the plaintiff's prior contributory negligence was in the case in order to prevent his recovery, it must directly contribute and said instruction only required the jury to find that it contributed to his injury. Klockenbrink v. Railroad, 172 Mo. 678; Moore v. Railroad, 126 Mo. 265. (6) An accident instruction has no place in a last chance case. Defendant's instruction No. 4 was properly refused. Simon v. Met. St. Ry. Co., 178 S. W. 449; Beauvais v. St. Louis, 169 Mo. 500; Wise v. Transit Co., 189 Mo. 560; Beave v. Transit Co., 212 Mo. 331; Felver v. Railroad, 216 Mo. 209; Lagrace v. Railroad, 183 Mo. App. 70; Beard v. Railroad, 197 S. W. 911; Tallman v. Nelson, 141 Mo. App. 486.

DAUES, J.—Plaintiff, a minor, by next friend, sues the defendant to recover for personal injuries alleged to have been sustained by said minor by being struck by an automobile belonging to defendant and driven by his chauffeur, Harry J. Schumacher.

The petition alleges that plaintiff on October 1, 1918, at the intersection of Hanover and Gravois avenues in St. Louis County, while riding a bicycle was struck and injured by an automobile owned by defendant and driven at the time by defendant's servant and employee. The negligence alleged is that defendant's agent failed, when meeting plaintiff, to turn to the right; failed to slow down the automobile to such speed that the same could have been readily stopped; that the driver of the automobile saw, or by the exercise of ordinary care could have seen, the plaintiff in imminent peril in time to have stopped or checked the automobile and thus avoided the injury, and, finally, that the automobile was operated at an unreasonable rate of speed.

The answer is a general denial and a plea of contributory negligence.

The reply is a general denial.

The cause was tried to a jury, resulting in a verdict upon which judgment was rendered in favor of plaintiff in the sum of $1500. Defendant appeals.

It appears that October 1, 1918, was a clear, dry day, and that the accident occurred about 2:30 in the afternoon of that day. The place of the accident was at the intersection of Hanover and Gravois avenues in St. Louis County. These streets intersect at right angles, and at this point Gravois avenue runs north and south, and Hanover avenue runs east and west, though Gravois avenue is a main road leading out from the City of St. Louis towards the west.

The defendant lived at 3432 Shenandoah avenue in the City of St. Louis, and was in the undertaking business. In his employ at the time was one Harry J. Schumacher, who on the day mentioned was directed by defendant to deliver an outside coffin box at Old St. Marcus Cemetery. This cemetery is situated on Gravois avenue, about five blocks east of River Des Peres in the City of St. Louis. While it is not entirely clear how far this cemetery is from the street intersection where the accident occurred, we think it may be said that the distance is about eight or ten city blocks, though this road is not laid off at this point in blocks.

The chauffeur on the way to the cemetery took with him his nephew, his niece and her child. He delivered the box at the cemetery, and then instead of returning to the defendant's garage with the machine, he proceeded out Gravois Road, passed the City limits, and went out into the county. The chauffeur testified, and it is not controverted, that he had started into the county to go to "Long's farm," which is located about three miles out in the county and west of the City limits. The purpose of this trip was to get some pears for his personal use, and he had his relatives in the machine for the purpose of taking this ride into the county.

It is not necessary to detail plaintiff's evidence as to the circumstances surrounding the accident, there being no point made that the verdict is not supported by substantial evidence on behalf of plaintiff, except that learned counsel for appellant insists that defendant's servant was not acting within the scope of his employment at the time of plaintiff's injury. It is then sufficient here to say that plaintiff introduced evidence sufficient to take the case to the jury on the question of Schumacher's negligence, the only question being whether defendant's chauffeur was at the time of the accident acting within the scope of his employment.

There was evidence on the part of plaintiff tending to show that plaintiff, then about sixteen years old, was riding a bicycle and had turned from Hanover avenue into Gravois avenue and was riding towards the City of St. Louis; that after he turned into Gravois avenue he was on the right side of the street coming east (or nearly north), and that Schumacher was driving defendant's automobile in the opposite direction and was on the left side of Gravois avenue going out from the City; that he came towards plaintiff, and that plaintiff in order to avoid being struck turned to the left side of the street, and as he turned he was struck by defendant's automobile and injured; that Schumacher was then driving the car at about twenty-five miles an hour. Plaintiff's injury was a broken left leg and other injuries. No question arises as to the amount of the verdict.

Defendant's evidence, given by the chauffeur and by Dr. James Stewart, Supervisor of the Medical Department of the Board of Education of the City of St. Louis, a disinterested witness, is strongly contradictory to plaintiff's testimony as to the facts and circumstances surrounding the collision.

The question presented on this appeal is whether the court erred in refusing defendant's instruction offered at the close of the testimony declaring as a matter of law that the plaintiff could not recover. The point made is that there is no evidence of any kind appearing

in the record that Schumacher at the time of the accident was then engaged in his master's business, or within the scope of his employment, but that, on the other hand, there is direct evidence appearing to the contrary, to-wit that the chauffeur was at the time of the accident on a mission purely of his own, without the knowledge, consent or permission of defendant, his employer. Plaintiff, on the other hand, insists that such showing was made by introducing admissions of defendant to that effect, and relies upon testimony given by Clara Ursch, plaintiff's mother, appearing in the record as follows:

"A. I went down to Mr. Heier and he was down on the pavement, and I said, 'Is this Mr. Heier?' and he says, 'Yes.' 'Well,' I says, 'I came down to see about the accident to my son.' He says, 'Lady, I never ran over that boy;' he says, 'My chauffeur ran over him at the time.'

"Mr. Powell: Just a minute; Mr. Heier was not present at the accident at all; it is not an admission against interests in any way whatsoever; I don't see the purpose of the question.

"The court: Do you claim that he was present?

"Mr. Morrow: I claim that he made the admission that this chauffeur was working for him at the time and that is the purpose, that I want to show that this man was working for him.

"Mr. Powell: I withdraw the objection.

"The Court: I don't see any objection to that; I didn't understand the purpose for which it was offered.

"Mr. Morrow: (Q.): There has been so many breakings in on this, now, you had better commence and tell what you said to him and what he said to you about whose chauffeur that was. A. Mr. Heier was standing on the sidewalk when I went there, and I says, 'Is this Mr. Heier?' He says, 'Yes, ma'am.' I says, 'Well, I came down to see you about the accident to my son.' He says, 'Lady, I didn't run over your son; my chauffeur was working for me at that time;' he says, 'He is on the inside of the building.' I says, 'Where at?' He says,

·'Inside; you will have to go in and talk to him.' So I went in the undertaker's stable and I talked to Mr. Schumacher.''

On the cross-examination the following question and answer was given by this witness:

''Q. And you, as a matter of fact, went in there to ask for the chauffeur, did you not? A. I went to see, see Mr. Heier about what he intended to do for my son, and he says he wasn't the man that ran over the boy; that his chauffeur had hit him.''

Also, the following questions and answers appeared in the testimony of this witness:

''Q. Did you have a talk with Mr. Schumacher? A. Yes, sir, I did.

''Q. I will ask you whether or not he told you that he was within the scope of his employment? That is to say, he was working on Mr. Heier's business when he ran over the boy? A. He said he was working for Mr. Heier.

''Q. At the time? A. Yes, sir.

''Q. That he was doing something for Mr. Heier at the time? A. He didn't say what he was doing; he didn't tell me what he was doing.''

Counsel for plaintiff says that defendant by these statements has admitted that his chauffeur ran over the plaintiff and injured him, and that he was working for defendant at the time, and lays great stress upon the word ''working'' as meaning that the defendant admitted, by the use of that word, that the chauffeur was at the time of the accident actually engaged in ''working'' for defendant; whereas, on the other hand, it is argued by defendant's counsel that the clause ''my chauffeur was working for me at the time,'' and the other statements made, mean and can only mean that defendant informed plaintiff's mother by this statement that he, the defendant, had nothing to do with the misfortune, but that he directed her by those words to see Schumacher, his employee, who ran over her son.

We have examined this testimony very carefully, and, indeed, resolved to give plaintiff the benefit of every legitimate inference favorable to him, yet we conclude that there is nothing in such testimony of defendant's admissions which goes beyond the mere admission that the person driving defendant's car at the time of the injury was defendant's employee. There certainly is nothing contained in any statement by defendant from which it may be said that the defendant admitted that the chauffeur was at the time of the accident acting within the scope of his employment. It is but an admission, as we have said, that the person driving the machine with which plaintiff collided was in defendant's employ at the time. Indeed, it seems from the statement of counsel for plaintiff, as above set out from the record explaining the purpose of such testimony, that counsel at the time this evidence was introduced so understood the purpose and effect of the admissions.

Counsel for plaintiff relies upon the cases of Latham v. Hosch, 207 Mo. App. 381, 233 S. W. 84, and Pinteardd v. Hosch, 233 S. W. 81, decided by this court. Those cases clearly have no application here. In those cases there was testimony of distinct and specific admissions on the part of the defendant that the chauffeur, Jackson, was at the very time of the accident engaged in the business of the defendant; that is, was returning home with defendant's car after having mailed a special delivery letter, all at the direction of the defendant. Such is not the case here.

We then come again to the case of Guthrie v. Holmes, 272 Mo. 215, 198 S. W. 854. We must examine this case to see how the facts here are measured by the law as laid down in that case.

In the case at bar the record evidence shows that the chauffeur was in the employ of the defendant. This raises a presumption that Schumacher at the time was acting within the scope of his employment and makes a prima-facie case against the owner resting on the presumption. But under the law in the Guthrie case, supra,

such presumption takes flight upon the appearance of real facts to the contrary.

Schumacher testified that he had carried out the master's instructions to deliver the box at the cemetery, and that from there he had started for Long's farm, about three miles out in the county. He was going in the opposite direction from which he would go on the master's business, for following his duties to the master he was to return to the garage in the City of St. Louis from the cemetery; that he had started in the opposite direction, leaving the City and going out into the county to this farm to get some pears for his family use. It is not quite clear how far he had gone into the county, and that does not become the decisive question. The decisive question becomes: Whose business was being done and whose general purposes were promoted at the time by the chauffeur. [Wolf v. Terminal Railroad Assn., 282 Mo. 559, l. c. 563, 222 S. W. 114.]

The following questions and answers are taken from the chauffeur's testimony:

"Q. All right; then, what were you doing? A. Then from there I was going to Long's farm to get some pears; they have these big Bartlett pears out there, and I had my niece and daughter and nephew in the car with me to take them out to the farm.

"Q. You had attended to the commission that Mr. Heier had assigned to you, had you? A. Yes, sir.

"Q. By delivering this box; and who were these pears for? A. They were for my personal use.

"Q. They were for your personal use? A. Yes, sir. . . .

"Q. In other words, you had delivered the box; Mr. Heier, I believe, is an undertaker? A. Yes, sir.

'Q. And by a 'rough box,' you mean a —. A. Outside coffin box.

"Q. Outside coffin box; Mr. Heier had sent you out there, as I understand it, to deliver this box? A. Yes, sir.

"Q. And where were you to go from that place? A. Why, back to the garage; I had figured I had these

pears ordered out there—it was so close—maybe three miles out there, I would go out to get them, the rest of the afternoon.

"Q. You went out there to get these pears for yourself and not for Mr. Heier? A. For myself, exactly, yes.

"Q. You had no permission from Mr. Heier to go out there and get these pears for yourself, as I understand it? A. No—no special permission, no."

On cross examination of this witness, the following occurred:

"Q. Well, but you did have to report back, didn't you? A. Report back, yes, when I got through to take the car back into the garage.

"Q. Now, this cemetery is east of the River Des Peres? A. Yes.

"Q. Not very far east? A. Well, quite a ways east, I guess.

"Q. Well, what do you mean by 'quite a ways east?' A. Well, maybe five or six blocks—seven blocks; you see, there is no blocks go through there.

"Q. But it is not a very long distance? A. Well, there is old St. Marcus' Cemetery, and then I think there is St. Peter and Paul Cemetery.

"Q. Well, that is over on the other side of the street? A. Yes; and then there is quite a ways, a stretch in there and a street car loop and then there is a bridge and then there is about three streets in there.

"Q. Well, about five or six blocks, all told, there are? A. Over all of that; yes, sir.

"Q. And then, after you left the cemetery, you drove some—that is, not over four blocks to the bridge there, is it, from where you left the cemetery? A. Well, I think it is; I think it is; it is more than four blocks.

"Q. And then you crossed the bridge? A. Yes, sir.

"Q. And you were driving westwardly on this concrete road? A. Well, it is brick there for about two blocks, and then the concrete starts in."

Accordingly, there is positive proof on the part of defendant that the chauffeur was not at the time of the accident acting within the scope of his employment, but on the contrary was then on a mission of his own. No evidence whatsoever is adduced by plaintiff in contradiction of such testimony.

The next question then arises, whether this deviation from the master's directions to his servant was such a slight deviation or such "incidental things done by him for his own benefit while in the line of his service for the master" which will not destroy the presumption that the regularly employed chauffeur at the time he negligently ran his automobile over this boy was acting within the scope of his employment. In other words, whether the acts of Schumacher in this case were only slight deviations and mere incidents of his employment which did not destroy the presumption. [Guthrie v. Holmes, supra.]

We hold, indeed we must hold, that the acts of the chauffeur in this case were not slight deviations nor mere incidents of his employment. Clearly he was not on his master's business when the accident occurred. All that remained for him to do that afternoon, in so far as the master's business was concerned, was to return from the cemetery and put up the machine in the garage. He, however, having taken his relatives with him, had started in the opposite direction, had gone beyond the limits of the City and was already well on his way to Long's farm, which was some three miles away, to get pears for his personal use. He had combined the pleasure of his relatives with his own personal business on the trip, and certainly no part of the master's business was being served at that time. He was on his way in pursuance of his own purpose and his own mission. [Kilroy v. Crane Agency Co., 203 Mo. App. 302, 218 S. W. 425; Calhoon v. Mining Co., 202 Mo. App. 564, l. c. 569, 570, 209 S. W. 318.]

It is true, it is not always an easy matter to determine when the servant has departed from the scope of

his employment in such degree of deviation that we can say as a matter of law that the chauffeur has departed from the scope of his employment. We also recognize the rule that unless it clearly appears that the deviation is marked and unusual, "such as where the chauffeur takes his employer's car on a frolic of his own, or a joy ride," such question of fact falls within the province of the jury. However, we cannot conscionably say otherwise after reading this record, than that it appears as a matter of law that the chauffeur in this case had departed from the scope of his employment, and hence the rule of *respondeat superior* does not apply. The court erred in refusing defendant's instruction at the close of the case in the nature of a demurrer to the evidence.

Accordingly, the judgment must be reversed. It is so ordered. *Allen, P. J.,* and *Becker, J.,* concur.