JOHN F. ANDERSON, Respondent, v. CHARLES NAGEL, Appellant.

St. Louis Court of Appeals.    Opinion Filed December 4, 1923.

1. **MASTER AND SERVANT:** Negligence: Automobiles: Servant Committing Tort Whilst on His Own Errand: Master Not Answerable Under Rule Respondeat Superior. Where a servant in charge of his master's automobile, though originally bound upon a mission for his master, completely forsakes his employment and goes upon an errand exclusively his own (he being upon his own trip until he had returned to the point of departure from the path of duty, or to a point where in the performance of his duty he was required to be), and whilst so engaged commits a tort, the master is not answerable for such tort under the rule of *respondeat superior*, and the court must so adjudge as a matter of law.

Anderson v. Nagel.

ON MOTION FOR REHEARING.

2. **COURTS: Divided Opinion of Court of Foreign State: Out of Accord With Missouri Decisions: Not Persuasive Authority.** A decision of the highest court of another State out of accord with the decisions in this State and the greater weight of authority elsewhere, the prevailing opinion being concurred in by only four of the judges and a strong, well-reasoned dissenting opinion concurred in by three judges including the Chief Justice, and the court, in arriving at its conclusion as set forth in the prevailing opinion, not only ran counter to the views of three of its own members, but reversed the judgment of the appellate division, *held*, the prevailing opinion cannot be regarded as persuasive authority.

3. **MASTER AND SERVANT: Negligence: Tortious Act of Servant Committed in Use of Appliance Furnished by Master: Not within Scope of Employment: Master Not Liable.** A master is not responsible for the tortious act of his servant merely because such tortious act was committed in the use of an instrumentality or appliance furnished by the master; unless the tortious act of the servant was committed in the execution of the master's business within the scope of his employment the master is not liable.

4. **COURTS: Decisions: Ruling by Supreme Court Binding on Court of Appeals.** The rule announced by the Supreme Court that where the undisputed facts disclose that the tortious act of the servant was not committed in the execution of the master's business within the scope of his employment, the master is not liable, and that the court must so declare as a matter of law, is binding on the Court of Appeals.

Appeal from the Circuit Court of St. Charles County.— *Hon. E. B. Woolfolk*, Judge.

REVERSED.

*Geers & Geers* for appellant.

(1) (a) Owner is not liable for injuries resulting from the negligent operation of his car by a member of his family or because it was driven by a member of his family, or because he permitted a member of his family

to drive it. Mast v. Hirsch, 199 Mo. App. 1, 202 S. W. 275; Bolman v. Bullene, — Mo. —, 200 S. W. 1068. (b) Relation of parent and child is not sufficient of itself to render the parent liable for the negligent operation of his automobile by his child, whether adult or minor. Hays v. Hogan, 273 Mo. 1, 200 S. W. 286; Buskie v. Januchowsky, — Mo. App. —, 218 S. W. 696; Mayes v. Fields, — Mo. App. —, 217 S. W. 589; Bright v. Thacher, — Mo. App. —, 215 S. W. 788; Basset v. Riley, 131 Mo. App. 676; Baker v. Haldeman, 24 Mo. 219; Paul v. Hummel, 43 Mo. 119; Mast v. Hirsch, 199 Mo. App. 1; Bolman v. Bullene, — Mo. App. —, 200 S. W. 1068. (c) The fact that child had father's general or special permission to use the automobile makes no difference. Hays v. Hogan, 273 Mo. 1, 200 S. W. 286. (d) The ownership of an automobile purchased by the father for the use and pleasure of himself and family does not render him liable in damages to a third person for injuries sustained thereby, through the negligence of his minor son while operating the same on a public highway in furtherance of his own business or pleasure; and the fact that he had the father's special or general permission to use the automobile is wholly immaterial. Bolman v. Bullene, — Mo. —, 200 S. W. 1070; Hays v. Hogan, 273 Mo. 2, 200 S. W. 292. (2) (a) To hold an automobile owner liable for injuries under the rule *respondeat superior,* it must be shown that those in charge of and running the automobile not only were his agents and servants, but also were engaged at the time in his business or service. Michael v. Pulliam, — Mo. App. —, 215 S. W. 763. (b) Where a chauffeur, either with or without his master's consent, uses the master's automobile for his own business or pleasure and negligently inflicts injury on another, the master cannot be held liable, for the reason that the negligent act, being entirely outside the scope of the servant's employment, cannot call in-

to action the rule *respondeat superior*. Miller v. Rice-Stix, — Mo. App. —, 223 S. W. 437. (c) Though the automobile was being operated by defendant's agent, his liability does not depend upon the mere fact of agency alone, but depends, as well, upon whether plaintiff's injury was received while defendant's agent was acting about his master's business or within the scope of his employment. Warrington v. Bird, 168 Mo. App. 385; Fullerton v. Fordyce, 121 Mo. 1, 13; Linn v. Massillon Bdge. Co., 78 Mo. App. 111; Calhoon v. D. C. & E. M. Co., — Mo. App. —, 209 S. W. 318. (d) The Sunday pleasure trip of defendant's son had no relation to his services as an employee of the defendant, and the latter's immunity from liability is settled by many decisions given on similar facts. Stone v. Hills, 45 Conn. 44; Walker v. Railroad, 121 Mo. 575; Evans v. Dyke Auto Co., 121 Mo. App. 266. (3) (a) Where defendant allowed his son to drive his motor car on a particular errand, and the son, after doing the errand, drove the car on his own purposes, the son cannot at that time be treated as defendant's servant or agent, for whose negligence defendant would be liable. Bolman v. Bullene, — Mo. —, 200 S. W. 1068. (b) In order to hold the owner of an automobile or other vehicle liable for injuries caused by the negligent driving of his vehicle by a member of his family, it must be shown that the relation of master and servant existed between the owner and the member driving, and, further, that at the time the injury was inflicted by the negligent act, the driver was about the business of the owner. Bolman v. Bullene, — Mo. —, 200 S. W. 1068. (c) A master is not responsible for any act or omission of his servants which is not connected with the business in which they serve him, although in general he is responsible for the manner in which they execute his orders and for their negligence in selecting means by which the orders are to be carried out. In determining whether a particular act is

done in the course of the servant's employment, it is proper first to inquire whether the servant was at the time engaged in serving his master. If the act was done while the servant was at liberty from his services, and pursuing his own ends exclusively, there can be no question that the master is not liable, even though the injuries complained of could not have been committed without the facilities afforded by the servant's relation to the master. Garretzen v. Duenckel, 50 Mo. 104; Evans v. Dyke Auto Co., 121 Mo. App. 266; Shearman & Redfield Negligence, sec. 63 and note. (d) Where a servant, even with the master's consent, takes the latter's car, and while using it for his own purposes negligently injures a person thereby, the master is not liable. Guthrie v. Holmes, 272 Mo. 215, 198 S. W. 854. (e) It is well settled that the master is not liable for the acts of his servant done outside the scope of his employment. Snyder v. Hannibal & St. J. R. Co., 60 Mo. 413; Warrington v. Bird, 168 Mo. App. 385; Evans v. Dyke Auto Co., 121 Mo. App. 266; Garretzen v. Duenckel, 50 Mo. 104. (4) (a) There is no presumption that a minor child is the agent of the father in driving the latter's car, or that when driving such car he is acting within the scope of his authority. Hays v. Hogan, 273 Mo. 2, 200 S. W. 286. (b) The fact that the father owned an automobile and that it was, with his consent, being driven by his son at the time of the injury to another, due to the son's negligent driving, raises no presumption that the son was acting within the scope of his authority or that he was acting as his father's agent and servant. Besides, such a rule would be to base one presumption upon another, namely, that the son was the agent of the father, and that as such agent he was acting within the scope of his authority, whereas the law requires a presumption to be based upon a fact. Hays v. Hogan, 273 Mo. 2. (c) Where a chauffeur was directed to take an automobile to the master's garage, which he could have done

in an hour, and instead of doing so spent five hours or more driving over the city before he negligently ran the car against plaintiff, there is no presumption that at the time of the accident he was acting within the scope of his employment; but, in order to hold his master liable for the damages, positive proof that he was in fact at the time of the accident engaged in the performance of duties for the master was required. Guthrie v. Holmes, 272 Mo. 215. (5) In a suit for damages against the owner of an automobile, for personal injuries due to the negligent driving of the automobile by the chauffeur, in the absence of the owner, proof that the automobile was owned by the defendant and that the chauffeur was in his general employment raises a presumption that the chauffeur at the time was acting within the scope of his employment and makes a prima-facie case against the owner resting on the presumption. But such presumption takes flight upon the appearance of evidence of real facts to the contrary. Guthrie v. Holmes, 272 Mo. 215.

*B. H. Dyer* for respondent.

(1) In a suit for injuries caused by the negligent driving of defendant's automobile, proof of defendant's ownership of the automobile and that it was being driven by defendant's regularly employed driver raises the presumption that the driver was using the automobile in defendant's business, making defendant liable for the driver's negligence. O'Malley v. Construction Co., 255 Mo. 386; Fleischmann v. Ice & Fuel Co., 148 Mo. App. 117; Sharp v. Lambert, 142 Mo. App. 567; Wiedeman v. Taxicab Co., 182 Mo. App. 523; Vanneman v. Laundry Co., 166 Mo. App. 685; Fidelity & Casualty Co. v. K. C. Ry. Co., 207 Mo. App. 137. (2) Although defendant's servant may have made a slight deviation from the line of his duty to his master at the time he caused a negligent injury to a third person, yet whether at the time he

was acting within the scope of his authority is for the jury to decide. Garry v. Boehmer Coal Co., 421 S. W. 976; Fidelity & Casualty Co. v. K. C. Rys. Co., 207 Mo. App. 137; George v. Carstens Packing Co., 91 Wash. 637; Slothower v. Clark, 191 Mo. App. 105; Burton v. La Duke, 210 Pac. 978; Edwards v. Earnest, 94 So. 598; Donahue v. Vorenberg, 227 Mass. 1; Ritchie v. Walker, 63 Conn. 155. (3) Although a servant may depart from the service of his master to the point of placing himself outside the scope of his employment, yet he may return to that service and bring himself within the scope of his employment and if he negligently cause an injury to a third person after having so returned to his service the rule of *respondeat superior* applies and the master is liable. Fellhauer v. Quincy O. & K. C. R. R., 191 Mo. App. 137; Vaneman v. Laundry Co., 166 Mo. App. 685.

SUTTON, C.—This is an action for damages arising from a collision of defendant's automobile with plaintiff's automobile on a public road in St. Charles County, on Sunday, August 21, 1921. The cause was tried to a jury. There was a verdict for the plaintiff in the sum of eight hundred dollars, and judgment was given accordingly. Defendant appeals.

The facts so far as material to the decision of the case here are undisputed. Defendant was the owner of the automobile which collided with the plaintiff's automobile. Defendant's automobile was a heavy, high-powered Buick. Plaintiff's, was a new Gardner. The collision occurred on the public road between Black Walnut and St. Charles. Defendant's automobile was being driven by his son, Frank Nagel, who was eighteen years old. Defendant was a farmer and lived in the neighborhood where the collision occurred. He resided on his farm with his family, of which Frank was a member. The Buick car was used in the defendant's business and for the pleasure of himself and family. Frank was the

driver of the car when it was used either for business or pleasure. He was permitted to use the car for his own personal purposes. He worked for defendant on the farm, performing such services as he was directed to do by the defendant. He was not at all times in the service of the defendant, but served defendant under his directions and orders in his farm work and other business, in the way that a minor son would be expected to serve his father while living with him as a member of his family. When his services were not required in his father's business, he was at liberty to pursue his own business or pleasure. On the day that the collision in question occurred, defendant directed Frank to go to the home of a neighbor by the name of Carl Chaule, to see about borrowing Mr. Chaule's hay rake to be used on defendant's farm the next day, and directed him to come right back to dinner. Pursuant to these directions, Frank took the defendant's car and drove to Mr. Chaule's home, about twelve o'clock. There is a private lane leading from defendant's home northwest one mile to the public road. The Chaule home is located at the intersection of the private lane with the public road on the right of the lane going northwest. The public road runs from Black Walnut south, thence southwest, thence west to St. Charles. The point where the road turns west towards St. Charles is called the Sandemeyer corner. This corner or turn in the road is about two hundred yards east of the Sandemeyer home and is southwest of the Chaule home. The road runs southwest past the Chaule home to the Sandemeyer corner. Defendant's son drove through the private lane to the public road and turned northeast into the public road and from the public road into Mr. Chaule's yard. He there saw Mr. Chaule and obtained his permission to borrow the hay rake for use on defendant's farm the next day. He then backed out of the yard into the public road and drove up the public road past the intersection of the lane with the

public road and past the Sandemeyer home towards St. Charles to a point about three quarters of a mile west of the Sandemeyer home.  He then turned around and drove back east past the Sandemeyer home to the Sandemeyer corner or turn in the road, where the collision occurred.  His original purpose in driving from the Chaule home towards St. Charles was to go to the Sandemeyer home to find out who was going to play ball at Orchard Farm.  On arriving at the Sandemeyer home, he saw several automobiles at the home, and, concluding that the Sandemeyers had company, decided he would not stop at the Sandemeyer home, and then drove three-quarters of a mile past the Sandemeyer home towards St. Charles, found a good place to turn around, and there turned back and started home, and on arriving at the Sandemeyer corner or turn in the road about two hundred yards east of the Sandemeyer home, he met the plaintiff driving in the opposite direction, and the collision occurred.  In going from the Chaule home to the Sandemeyer home and three-quarters of a mile beyond, the defendant's son was traveling upon the public road towards St. Charles and in an opposite direction from the defendant's home. After the collision, he drove from the place of the collision northeast to the intersection of the lane with the public road, thence through the lane to the defendant's home.

Frank Nagel, defendant's son, being produced by the defendant, on his examination in chief, testified: "My father sent me over to Mr. Chaule's and told me to come right back; he told me to borrow a hay rake.  I went to Mr. Chaule's.  I stayed at Mr. Chaule's house about five minutes, maybe ten.  When I left there I took right up the road towards St. Charles, about a mile.  I went to Sandemeyer's to see about a ball game and I saw three or four cars in there, and I didn't want to bother them, and I went up about three-quarters of a mile, further on up; then I turned around and come back.  When

I left Mr. Chaule's to go to Sandemeyer's, that was away from home, toward town, away from my house. After I left Mr. Chaule's place and went past the road that leads to my house, I was going further away from home all the time.'' On cross-examination he testified further: ''When I went to Mr. Chaule's I went direct from my father's house to his house. When I left his place I backed out of his premises to the public road to go to Sandemeyer's. When I went to Sandemeyer's I went on my own accord. I made up my mind to go to Sandemeyer's to see who was going to play ball at Orchard Farm. I got out in the road and headed towards St. Charles. When I got to Sandemeyer's I saw three or four cars there, so I drove on. When I seen the cars there I went right past then. I didn't stop at Sandemeyer's; I could see from the road what was in the yard; I saw the yard full of cars. When I saw that I formed a different intention and drove on up the road about three-quarters of a mile, found a good place to turn around, I turned around and came back; I was going home. I was on my way home when Anderson ran into me. I guess it's something like two blocks from Chaule's to Sandemeyer's, two or three blocks, I guess, about a block and one-half.''

Plaintiff testifying on his own behalf, identified a plat and stated that it was ''a pretty accurate map of the road.'' The plat was introduced in evidence by plaintiff. The plat shows the public road leading from Black Walnut to St. Charles and the lane leading from the Nagel home to the public road. It also indicates the location of the Nagel, Chaule and Sandemeyer homes. The distance from the intersection of the lane with the public road to the Sandemeyer home is not indicated on the plat. Plaintiff testified, however, that the collision occurred about two hundred yards east of the Sandemeyer home, at the turn in the road. Measurement of the lines of the public road as drawn on the plat shows the distance from the point of collision to the intersection

of the lane with the public road to be two and one-half times the distance from the Sandemeyer home to the point of collision.

Plaintiff, on direct examination, testified concerning a conversation he had with defendant at his home the next day after the accident, as follows: "Well, his wife says to me, 'I guess I know what you are coming for,' and Mr. Nagel spoke up and said, 'What's that?' He says, 'I sent that kid over to Chaule's to see if I could borrow a rake to rake hay Monday or for tomorrow.' He says, 'I sent that boy down there to see if he could borrow the hay rake.' He says, 'I sent him down there; told him to go down there, that dinner wasn't quite ready; that he could go down there and come back before dinner would be ready; dinner was going to be a little bit late.'" On cross-examination, plaintiff further testified, as follows: "I went to Mr. Nagel's house and when I got there he didn't even know there had been an accident. His wife said to him that I had come to see about the accident that Frank had, and then I told him about the accident. Then Mr. Nagel told me he sent his son Frank down to Chaule's to borrow a hay rake, and told him to come right back to dinner, that dinner would be a little late and that it would be ready by the time he got back."

Carl Chaule, produced by plaintiff, testified as follows: "I remember the occasion when Mr. Anderson's car was in a collision there at the corner; it was at the corner towards St. Charles, going west, going to St. Charles. I went out there to see the car after the accident. I saw young Nagel at my house that day; he came to my house and I had a conversation with him. He came there to my house Sunday and asked for the use of my hay rake for Monday, and I told him 'yes.' This was around twenty minutes or a quarter after twelve o'clock. He then went away. It was about twenty minutes or a quarter of an hour after he had been at my

house that I learned of the accident. It wasn't very long afterward. When he left he backed out of my lot and went up the road; I looked out of my window and saw him going up the road.''

There was evidence to justify the jury in concluding that the collision occurred by reason of the negligence of defendant's son in operating defendant's car.

Defendant demurred to the evidence in the trial court. The demurrer was overruled, and defendant assigns this ruling of the trial court as error. He insists that the undisputed evidence shows that his son was not acting within the scope of his employment at the time the collision occurred. The general rules involved in the solution of the question raised are well settled. But, while the courts have shown great unanimity in the enunciation of the general rules, they have shown great diversity of opinions in the application of the rules to the facts presented in the numerous cases decided. It is stated generally that the master is never liable for injuries occasioned to a third person by the negligence of his servant, unless the servant at the time of the injury was in the execution of the master's business within the scope of his employment.

In Guthrie v. Holmes, 272 Mo. 215, l. c. 241, 198 S. W. 854, our Supreme Court adopted the rule tersely and comprehensively stated by Judge Johnson of the Kansas City Court of Appeals, as follows:

''It is elementary that the master is not liable for injuries occasioned to a third person by the negligence of his servant while the latter is acting beyond the scope of his employment for his own purposes, although he may be using the vehicle furnished him by the master with which to perform the ordinary duties of his employment. Where the servant, in carrying out the master's orders, merely deviates on some errand of his own from the strict course of duty, but while thus going *extra viam* is really engaged in the execution of some duty of his

214 M. A.—10

employment, or where he forsakes duty entirely for a time but returns to its path, the master will be liable for his negligence which injures a third person, under the doctrine of *respondeat superior.*"

In Ritchie v. Waller, 63 Conn. 155 l. c. 163, the rule was thus stated:

"If the servant in going *extra viam* is really engaged in the execution of the master's business within the scope of his employment, it is immaterial that he joined with this some private business or purpose of his own."

In Storey v. Ashton, L. R. 4 Q. B. Cases 476, it was said that, if the driver of a vehicle "while acting in the master's business were to make a slight deviation to carry some business of his own into effect," or, "if the driver when going on the master's business took a somewhat longer road," to execute some purpose of his own, than he would have taken in the strict performance of his duty, the driver would not on account of such deviation cease to be in the employment of the master so as to divest the latter of all responsibility.

In Patterson v. Kates, 152 Federal 481 l. c. 482, the rule is announced in this language:

"If a servant abandons or departs from the business of his master and engages in some matter suggested solely by his own pleasure or convenience, or pursues some object which relates to an end or purpose which may be said to be the servant's individual and exclusive business, and, while so engaged, commits a tort, the master is not answerable, although he was using his master's property, and although the injury could not have been caused without the facilities afforded to the servant by reason of his relations to his master."

In Morier v. St. Paul, Minneapolis and Manitoba Ry. Co., 31 Minn. 351 l. c. 353, it was said:

"If the servant step aside from his master's business, *for however short a time,* to do an act not con-

nected with such business, the relation of master and servant is for the time suspended."

In the case of Ursch v. Heier, 210 Mo. App. 129, 241 S. W. 439, recently decided by this court, the facts are very similar to the facts in this case. In that case the owner of an automobile directed his chauffeur to deliver a box at a cemetery in the city of St. Louis, and the chauffeur did not return from the cemetery and put up the machine in the garage as his duties to the master required, but, taking relatives with him, started in the opposite direction and had gone beyond the city limits into the county upon a personal errand when an accident occurred, inflicting injuries for which the suit was brought. The court held, as a matter of law, that the chauffeur had departed from the scope of his employment, and hence the rule of *respondeat superior* did not apply, and in so holding the court, after reciting the fact that the chauffeur had started into the county in the opposite direction from which he would go on the master's business, said:

"It is not quite clear how far he had gone into the county, and that does not become the decisive question. The decisive question becomes: Whose business was being done and whose general purpose was promoted at the time by the chauffeur."

Unquestionably the rule is, that, where it appears from the undisputed facts that a servant in charge of his master's automobile, though originally bound upon a mission for his master, completely forsakes his employment and goes upon an errand exclusively his own, and while so engaged commits a tort, the master is not answerable for such tort under the rule of *respondeat superior*, and the court must so adjudge as a matter of law.

In this case, when the defendant's son departed from the errand he was commissioned to perform and passed the intersection of the public road with the lane

leading to his home and went up the public road towards
St. Charles in the opposite direction from his home in
pursuit of his own purposes, there can be no question
that he thereby completely abandoned his employment.
There was no duty of his employment to be subserved
upon this excursion. There was no business of his master
to be promoted by going in the opposite direction from
that in which his duty as servant required him to go. He
was not making a mere incidental detour or deviation on
an errand of his own from the strict course of duty, so
that while thus going *extra viam* he was serving his
master while serving himself, as, where a servant to
serve some purpose of his own takes a longer road or
more circuitous route to reach the place to which his duty
as servant requires him to go, than he would have taken
had he conformed strictly and exclusively to the duty
of his employment.

It is contended, however, by plaintiff's counsel, that,
though the defendant's son had completely abandoned
his employment, in his journey towards St. Charles in
the opposite direction from his home, nevertheless, when
he turned back and started on his homeward journey, he
had then returned to his employment and was engaged
in the execution of his duty to defendant as his servant.
The contention, though plausible, cannot be sustained
either upon principle or authority. The defendant's son,
when he had turned about and started upon his home-
ward journey, had not then completed the trip upon
which he had embarked for his own purposes. He had
not then *returned,* he was but *returning,* to his employ-
ment. He was upon his own trip until he had returned
to the point of departure from the path of duty, or to
a point where in the performance of his duty, he was re-
quired to be. This view is supported by practically all
the authorities, and is not out of accord with the decisions
of the courts of this State. [Gousse v. Lowe, 41 Calif.
App. 715, l. c. 719; Cannon v. Goodyear Tire & Rubber
Co., 208 Pac. (Utah) 519, l. c. 521; Hartnett v. Gryzmish,

218 Mass. 258 Solomon v. Commonwealth Trust Co., 256 Pa. St. 55; Mitchell v. Crassweller, 13 Com. B. 237; Danforth v. Fisher, 75 N. H. 111; Colwell v. Aetna etc. Co., 33 R. I. 531; Reynolds v. Buck, 127 Iowa, 601; Riley v. Roach, 168 Mich. 294; Ludberg v. Barghoorn, 73 Wash. 476; St. Louis Ry. Co. v. Harvey, 144 Fed. 806; Rose v. Balfe, 223 N. Y. 481; Fleischner v. Durgin, 207 Mass. 435; Reilly v. Connable, 214 N. Y. 586.]

The industry of counsel has brought to our attention numerous authorities upon the vexed question here involved. We have read them all with the utmost fidelity, and, after having done so, we are constrained to hold that the learned trial judge erred in refusing defendant's demurrer to the evidence.

The Commissioner, therefore, recommends that the judgment of the circuit court be reversed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed. *Allen, P. J.,* and *Becker* and *Daues, JJ.,* concur.

ON MOTION FOR REHEARING. OPINION FILED FEBRUARY 23, 1924.

SUTTON, C.—Respondent's counsel insistently urges upon our attention a number of cases not cited in his original brief. These cases had not escaped our attention. They are, we think, clearly distinguishable on their facts from the case at bar. If, however, they may be regarded as supporting counsel's view, they are out of accord with the decisions in this State and the great weight of authority elsewhere. Counsel especially presses upon our attention Riley v. Standard Oil Co., 231 N. Y. 301, which on its facts is more nearly on all fours with the instant case than any other case cited by respondent's counsel. That case was decided by a divided court. The prevailing opinion was concurred in by four judges. A strong and well reasoned dissenting opinion was concurred in by three judges including the Chief

Justice. The court in arriving at its conclusion as set forth in the prevailing opinion, not only ran counter to the views of three of its own members, but reversed the unanimous judgment of the Appellate Division. The prevailing opinion, therefore, cannot be regarded as persuasive authority for the view of respondent's counsel in this case.

As to Heelan v. Guggenheim, 210 Ill. App. 1; Bila v. Bloomingdale; 184 App. Div. 65; McKiernan v. Lehmaier, 85 Conn. 111, and Graham v. Henderson, 254 Pa. 137, cited by respondent's counsel, in each of these cases the master had given his express consent to his servant to go to a designated place on a mission of his own, with an express or implied direction to go from such designated place on an errand for the master, and while on such errand for the master the injury sued for occurred.

Counsel further insists that our opinion is in conflict with the opinion of the Kansas City Court of Appeals in Vanneman v. Walker Laundry Co., 166 Mo. App. 685, l. c. 692, 150 S. W. 1128. In that case the injury sued for was inflicted by the negligence of defendant's servant engaged in driving defendant's laundry wagon. The duties of the driver were to go about the city in the laundry wagon receiving and delivering laundry. The facts are not set forth in detail. It is not shown that the driver, in visiting his sick friend, departed at all from the route where his duties required him to be, but the evidence does show, and the opinion expressly affirms, that at the time of the accident the driver had "started on his business route."

It is not the law of this State that the master is responsible for the tortious act of his servant merely because such tortious act was committed in the use of an instrumentality or appliance furnished by the master. It has been ruled by our Supreme Court in the most positive and emphatic terms that, where the undisputed facts disclose that the tortious act of the servant was not committed in the execution of the master's business

within the scope of his employment, the master is not liable, and that the court must so declare as a matter of law. We have neither the right nor the disposition to rule otherwise.

The Commissioner, therefore, recommends that the respondent's motion for rehearing be overruled.

PER CURIAM:—The foregoing opinion of Sutton, C., is adopted as the opinion of the court. Respondent's motion for rehearing is accordingly overruled. *Allen, P. J.,* and *Becker* and *Daues, JJ.,* concur.