MAY HEEG PESOT (PESOUT), Respondent, v. OLIVER YANDA ET AL., Defendants, METROPOLITAN LIFE INSURANCE COMPANY, a Corporation, Appellant.—126 S. W. (2d) 240.

Division Two, March 15, 1939.

*Jones, Hocker, Gladney & Grand* and *Vincent L. Boisaubin* for appellant.

*Eagleton, Waechter, Elam & Clark* for respondent.

340

COOLEY, C.—Action for damages for personal injuries sustained by the plaintiff as the result of an automobile collision. There were three defendants, Oliver Yanda and Carl Opaskar, drivers of the two automobiles which collided, and the Metropolitan Life Insurance Company, a corporation, Yanda's employer. The jury returned a verdict of $20,000 for plaintiff against Yanda and the insurance company and found for the defendant Opaskar. From judgment on the verdict the Metropolitan Life Insurance Company alone appealed.

The collision which caused plaintiff's injuries occurred about 7:45 A. M., January 16, 1935, at the intersection of Grand Avenue, a north and south street, and Park Avenue, an east and west street, in the City of St. Louis. Yanda, an insurance agent and collector for appellant insurance company, was driving his automobile east on Park Avenue and Opaskar, in his automobile, was driving north on Grand

Avenue. The two cars collided in the intersection. Yanda's car was caused to strike plaintiff, who was walking across Park Avenue, and she was severely injured. For the purposes of this appeal it is conceded that the evidence justified a finding that the collision was due to negligence on the part of Yanda in operating his car. Respondent's case is upon the theory that Yanda was the "agent and servant" of his co-defendant insurance company and was acting within the scope of such employment at the time of the collision. Appellant contends that it is not responsible for the negligent operation by Yanda of his automobile because it had no right to control the use of the automobile by Yanda or his operation thereof, hence he was not its servant with respect to such operation, and because at the time and place of the accident Yanda was engaged in a personal mission and was not within the scope of his employment. These contentions present the only issue on this appeal, except appellant's further contention that the verdict is excessive.

█ The only evidence as to the relationship which existed between Yanda and appellant was the testimony of Yanda, who was called by the plaintiff (respondent) as her witness. From his testimony the following facts appear: At the time in question Yanda was, and for some four years had been, employed by appellant in a capacity described by him as an "insurance agent," commonly known as a "debit man." He had no other employment. His work for appellant was to collect premiums on its outstanding insurance policies, some premiums, as on industrial policies, being payable weekly, and others, on "ordinary insurance," being payable every three, six or twelve months. He also sold insurance for appellant. The field or territory in which he was authorized to work for appellant was a definitely prescribed district, called a debit. Appellant had about fifteen such districts, or "debits," in St. Louis. Yanda's debit was in the northwestern part of the city, but appellant's office, to which Yanda reported and from which the business of his debit was supervised, was located at the intersection of Jefferson and Park Avenues, southeast (several miles, we gather from the testimony), of said debit. The office at Jefferson and Park is about ten blocks *east* of Grand and Park, where the accident occurred. Yanda lived several blocks south and east of the office. He was required to report at the office each morning, to deposit or "turn over" to the cashier the collections he had made the preceding day. He would then go from the office to his debit. His regular route in going from his home to the office, and the one he would have followed on this occasion but for the digression presently to be noticed, was to go north from his home to Park Avenue and then *west* on Park Avenue to the office.

On the morning in question, instead of going by said regular route to the office Yanda took his wife to the Kroger Baking Company, at Thirty-ninth and Rutger Streets, where she was employed. That

point is several blocks *west* and north of Grand and Park, where the accident happened. He had no purpose in going to that point except to take his wife to her working place. Leaving her there he then started east on Park Avenue toward the company's office to report and to turn over the preceding day's collections, which he had with him, and was thus on his way to the office when the collision occurred.

When Yanda was first employed he was asked if he had an automobile and replied that he had. He was not required or asked to use it in his work nor given any directions regarding its use. He was not directed either to use or not to use it. He used it if, as, and when he saw fit. He testified:

"Q. Whose automobile was this? A. Mine.

"Q. Did the Metropolitan Life Insurance Company contribute anything to its maintenance or upkeep? A. No, sir.

"Q. Did you have to drive it when you did their work? A. No, sir.

"Q. You drove it because you saw fit to do so? A. Yes.

"Q. And you drove it when you pleased, where you pleased, and as you pleased? A. Yes, sir.

"Q. If you didn't want to drive it you left it at home? A. Yes, sir.

"Q. You at no time received any directions from anybody connected with the Metropolitan Life Insurance Company as to its use, did you? A. No, sir."

He further testified that some of the men working for appellant in the same capacity had automobiles and some had not; that one did not have to have an automobile to work for the company and do the kind of work he was doing. He did, however, habitually use his car in covering his territory and in reporting to the office and appellant knew he did so. Neither appellant company nor anyone connected with it superior in authority to Yanda ever designated any particular route he should take in covering his territory or in reporting to the office, nor objected to his using his automobile.

The evidence as to the relationship existing between Yanda and appellant was introduced by plaintiff and is undisputed. Appellant offered no evidence. "While the facts and all reasonable inferences therefrom must be considered in the light most favorable to plaintiff's contentions, the relationship must be determined from all the facts shown by plaintiff, and not from part of them isolated from the rest." And since the facts shown by the evidence are undisputed the conclusion to be drawn becomes one of law. [Skidmore v. Haggard, 341 Mo. 837, 110 S. W. (2d) 726, 727 (1-2).] ■ We deem it unnecessary to decide whether or not the relationship of master and servant, such as to invoke the doctrine of *respondeat superior*, existed between appellant and Yanda while the latter was performing the duties of his employment because, in our opinion, even if it were con-

ceded that such relationship existed, Yanda was not acting within the scope of his employment at the time and place of the accident in question. The situation must be viewed and the question of liability ruled with reference to that time and place. ''A master is liable for the acts of his employee 'only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged with the result of the wrong at the time of the injury, and in respect of the very transaction out of which the injury arose.' '' [Vert v. Metropolitan Life Ins. Co., 342 Mo. 629, 117 S. W. (2d) 252, 255 (5).] In going from his home to the Kroger Baking Company to take his wife to her working place Yanda was clearly on a personal mission of his own. Not only was he not going to appellant's office or to his debit district but instead of being on his way to the office he was going in an opposite direction. He had no business to transact for appellant on that trip nor did he comtemplate transacting any. His sole purpose was to take his wife to her working place, a purpose unrelated to his employment. He was driving his own automobile. It was not an instrumentality furnished to or maintained for him by his employer for use in his work. He could use it or not as he pleased· in doing his work and of course could and did use it when and as he pleased in his personal affairs. If he had injured someone while on the way from his home to the Kroger Baking Company we think it clear that appellant would not be liable. But respondent says when he left his wife at the Kroger Baking Company and started from there to the office he then and there returned to his employment, reassumed—if he had temporarily abandoned—the relationship of servant and that from the moment he so started back to the office the relationship of master and servant between appellant and him existed, therefore, existed at the time and place of the accident. We do not think so. It is argued that if he had not been going to the office to report he would not have been at Grand and Park, where the accident occurred, and hence could not have been involved in it. But neither would he have been there at that time if he had gone from his home to the office, in the discharge of his duty as employee, by his usual and direct route, as by his own testimony he would have done had he not chosen to perform a mission of his own before beginning the day's work for his employer; in other words he would not have been at Grand and Park at the time in question but for said trip to Kroger Baking Company on business of his own with which his employer had no concern and which trip said employer had not directed or authorized him to make for it.

In Humphrey v. Hogan et al., 104 S. W. (2d) 767, 769 (3, 4), the Kansas City Court of Appeals said:

''There is some conflict in the authorities in this country as to when a servant returns to his employment after he has deviated therefrom for a purpose of his own. However, the weight of authority is well stated by Blashfield, as follows:

" 'The majority rule, and probably the better view, is that the relation of master and servant is not restored until he has returned to the place where the deviation occurred or to a corresponding place, some place where, in the performance of his duty, he should be.

" 'Under this rule it has been held that, where a chauffeur, instead of proceeding from the garage to the master's house, disobeyed instructions by driving several miles in the opposite direction on a personal errand, he was not, on the return trip to the garage to fulfill the duties of his employment, acting within the scope thereof.' [5 Blashfield, Cyc. of Automobile Law and Practice (Permanent Ed.), pp. 212, 213.]''

The court further said, "The law as stated by Blashfield is undoubtedly that of the State of Missouri," citing cases.

In Humphrey v. Hogan, supra, Hogan's co-defendant, Jewel Tea Company, was engaged in selling grocery products at retail. It had assistant managers in charge of various routes in the State, each route having also a route manager working under an assistant manager. Hogan was a route manager with headquarters at Moberly, his territory extending west and south from Moberly. A route book necessary for use in covering part of such territory had been lost and was located in Glasgow. The assistant manager under whom Hogan worked directed him to go to Glasgow and get the book, which was to be returned to Moberly. He went, taking his wife with him, in a truck owned by the Tea Company and by it furnished and maintained for Hogan's use in going from house to house in his territory to take orders, sell and deliver merchandise and make collections for the company. His direct route from Moberly to Glasgow and returning lay through Clifton Hill. Having obtained the book at Glasgow he started back to Moberly, but at Clifton Hill he digressed and went thence northward—out of his trade territory—to take his wife to the home of her parents, where she wished to visit. He left her at her parents' home and went to Macon, some twenty odd miles north of Moberly, where he spent the night with his parents. Next morning he started in the truck from Macon to return the truck and the book to Moberly, it being necessary that they be returned to said point that day, as well as that Hogan himself should return to cover his territory. On the way to Moberly he collided with the plaintiff's automobile and injured the plaintiff. The Court of Appeals said the issue "narrowed down to the question as to whether a driver of his employer's motor vehicle, who has departed in a substantial and marked degree from his route, on a mission of his own so as to take him without the scope of his employment, has returned to his work and employment when and after he starts back to his original destination." In that case it was contended that Hogan had returned to his employer's service when he started from Macon to Moberly with the truck and the book and to take up his regular work. The court denied that contention,

quoting in that connection from Blashfield as we have above set out. The court further said, l. c. 770:

"The fact that at the time of the collision he was returning the book to Moberly, and that possibly he had some grocery supplies in his car which were needed in his work the following day, did not work any material change in his relationship to his employer. Of course, the return of the truck, itself, was equally as necessary for the prosecution of the employer's business on the following day. At the time of the collision Hogan had not returned either to the place where the deviation occurred, which was some 33 miles from the point of the collision, or the place where, in the performance of his duties, he should be."

In Anderson v. Nagel, 214 Mo. App. 134, 259 S. W. 858, the defendant sent his son in his (defendant's) automobile to see a neighbor about borrowing a hay rake, directing the son to return with the car. The son attended to that business but in returning deviated from the return route on a mission of his own. He then started back, intending to go directly home with the car, but before reaching the point where he had deviated, the collision, which gave rise to the lawsuit, occurred. The court held the father not liable, saying, 214 Mo. App. l. c. 148, 259 S. W. l. c. 861 (1):

"The defendant's son, when he had turned about and started upon his homeward journey, had not then completed the trip upon which he had embarked for his own purposes. He had not then *returned,* he was but *returning,* to his employment. He was upon his own trip until he had returned to the point of departure from the path of duty, or to a point where in the performance of his duty, he was required to be. This view is supported by practically all the authorities, and is not out of accord with the decisions of the courts of this State." (Citing cases.)

In Ursch v. Heier, 210 Mo. App. 129, 241 S. W. 439, the defendant, an undertaker, sent an employee in his truck to take a coffin box to a cemetery and then return with the truck to the defendant's garage. The employee delivered the box and then, instead of returning to the garage at once, started in an opposite direction to go to a place some three miles distant on a mission of his own, and after going some eight or ten city blocks in that direction struck and injured the plaintiff. It was held that at the time and place of the accident the employee was not about his master's business and the master was not liable for his negligence. See, also, Kaufman v. Baden Ice Cream Mfrs., Inc. (Mo. App.), 7 S. W. (2d) 298; Vert v. Met. Life Ins. Co., supra; Green v. W. U. Tel. Co. (Mo. App.), 58 S. W. (2d) 772, in which a messenger boy, riding his own bicycle, in returning after his lunch period to the telegraph company's office where it was his duty to report for his work, injured a pedestrian and it was held the telegraph company was not liable; Nagy v. Kangesser (Ohio Court of Appeals),

168 N. E. 517, wherein the facts were quite similar to those of the instant case and it was held the employer was not liable. And in Halsey v. Metz (Mo. App.), 93 S. W. (2d) 41, 44, it is said to be the general rule ''that a servant using an automobile or other conveyance, whether belonging to his master or to himself in going to and from his place of work, is not at such times engaged in work for his master but acts for his own purposes only,'' unless the master, by contract express or implied, had agreed to furnish the servant transportation to and from his place of work as part of the servant's compensation. There was no such agreement in the instant case.

The mere fact that at the time of the accident Yanda had with him money of appellant which he intended to turn over to appellant's cashier at the office is not sufficient to establish that at said time he occupied the relationship of servant, under the circumstances shown, as was held in Humphrey v. Hogan, supra. He had said money with him on the outbound trip to the Kroger Baking Company. He may have had such moneys with him each evening, night and morning, from the time he left his debit territory in the evening until he reported at the office the next morning, but that fact, if a fact, could not make his employer responsible as master for his movements in his own automobile, on his own business or pleasure, during such time. Nor can the trip to the Kroger Baking Company be regarded as merely a ''slight deviation'' or as merely incidental and not necessarily out of the line of his duty to his employer. [See Guthrie v. Holmes, 272 Mo. 215, 236-237, 198 S. W. 854, 859 (3).] It was a complete departure from the line of his duty. If a servant could thus go thirteen or fourteen city blocks *away* from the place where his duty to the master called him, through the streets of a busy city with the traffic conditions we have today, on a purely personal mission of his own and the employer still be held liable for his negligent use of his automobile while on such expedition, under the doctrine of *respondeat superior,* it would be extending that doctrine, it seems to us, beyond reasonable limits. And if a servant, having thus departed and gone that distance away from his proper course, under circumstances such as we have here, may properly be said to have returned to his employment and resumed the relationship of servant the moment he starts back from his ''extra-curricular'' destination, why by the same logic may he not thus go ten or twenty miles or more and from the moment he starts back and all the way back from such distant point subject the employer, willy-nilly, to the hazard of liability for his negligent acts at a place where, so far as the employer is concerned, he had no business to be? We cannot give our approval to such contention. For the reasons indicated we think appellant cannot be held liable in this case and the judgment against it should be reversed. It is so ordered. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by Cooley, C., is adopted as the opinion of the court. All the judges concur.