## THOMAS v. McBRIDE EXP. CO.
### No. 28867.

St. Louis Court of Appeals.

Missouri.

March 16, 1954.

Motion for Rehearing or Transfer
to Supreme Court Denied
April 16, 1954.

Evans & Dixon and John F. Evans, St. Louis, for appellant.

Bahn & Gerhard, George R. Gerhard, St. Louis, H. Jackson Daniel, St. Louis, for respondent.

ANDERSON, Presiding Judge.

This is an action by Floyd E. Thomas, Jr., as plaintiff, against defendant, McBride Express Company, a corporation, to recover damages for personal injuries alleged to have been sustained on September 14, 1952, as the result of a collision at the intersection of California and Caroline Avenues in the City of St. Louis between a motor-bicycle being operated by plaintiff and a tractor type truck owned by defendant and operated by Michael Smyser, defendant's employee. The trial below resulted in a verdict and judgment in favor of plaintiff in the sum of $4000. Defendant has appealed.

In this court, appellant contends that the trial court erred in overruling defendant's motion for a directed verdict, for the reason that the record affirmatively shows that at the time and place in question the operator of the tractor-trailer involved had completely deviated from his employment and was engaged in a mission of his own wholly beyond the scope of his employment.

It was admitted by the defendant that it owned the tractor-trailer involved in the

accident, and that Michael Smyser was in the company's general employ.

Defendant was engaged in the business of long distance hauling from Mattoon, Illinois, to St. Louis, Missouri. Smyser had been in defendant's employ since August 1, 1952. He made trips during the week, and every other Sunday made what was known as the "long bread run". Such a trip was made on Sunday, September 14, 1952. Smyser's sixteen year old son Edward, with defendant's permission, accompanied Smyser on this trip. They arrived at defendant's St. Louis terminal at 1141 South Sixth Street about 12:30 p.m. Smyser left his equipment there and he and his son went by bus to visit friends named Scanlon who lived at 2709 Caroline Street. Smyser then left his son at this address and went to a ball game at Sportsman's Park. After the ball game had been in progress for about an hour it started to rain, whereupon Smyser left the park and returned to the Scanlon home about 3:00 or 3:30 p.m. He ate supper with his friends about 4:00 p.m. After supper he left and went to defendant's terminal to get the tractor-trailer. At the terminal miscellaneous freight was loaded onto the trailer. After this was done Smyser left defendant's terminal with the tractor-trailer to secure the balance of his load. He went first to the Grennan Bakery at 3900 Washington Avenue where he picked up a few cartons of cakes, then drove to an A. & P. Bakery located at Scott and Taylor Avenues where he picked up the rest of his load, which consisted of about a half load of bread. It was Smyser's usual practice to go first to the Grennan Bakery and then to the A. & P. Bakery to complete his load. After loading the bread at the A. & P. his trailer contained in the neighborhood of eighteen to twenty thousand pounds of miscellaneous freight and bread.

Smyser had been on this run for approximately six weeks. He testified that in leaving St. Louis "we always used Chouteau Avenue. That is the direct route to McArthur Bridge"; and his route back to Mattoon was through Litchfield, Taylor-

ville, Springfield, and Decatur. Deliveries were made in each of these towns. To reach Chouteau Avenue from the A. & P. Bakery Smyser would drive south on Taylor Avenue to Chouteau, then east to the bridge. On cross-examination Smyser testified that he was not told by his employer what streets to travel, or told to follow any certain route. He further testified:

"Q. So therefore it is up to your best discretion and your best judgment how to get from the terminal on South Sixth out to A. & P. and back to Illinois, isn't that correct? A. Yes, while we are supposed to take the most direct route.

"Q. Nobody that you worked for has ever told you that you can't take any other east-west street other than Chouteau Avenue to get back to Illinois, have they? A. No, sir.

"Q. Nobody has ever told you that you can't take Caroline Street to go back to Illinois, have they? A. No, sir."

On redirect examination the witness gave the following testimony:

"Q. Mr. Smyser, you were asked a number of questions about instructions by your company as to the route and streets to be taken; you were asked if you had ever been told specifically not to take certain streets; you said 'No', but you were supposed to stay on certain designated routes; is that correct? A. That's right.

\*      \*      \*      \*      \*      \*

"Q. Coming from the A. & P. Bakery at Taylor and Scott, what is the shortest and most direct route to the McArthur Bridge and on into your Illinois territory? A. It would be from Scott over to Chouteau Avenue, and Chouteau Avenue direct to McArthur Bridge and over.

"Q. And when you were asked if you had ever been told not to drive on

Caroline Street, had you ever been directed or instructed to drive on Caroline Street? A. No, sir."

The witness further testified that on none of the nineteen or twenty runs that he had made had he ever gone any other way from the A. & P. Bakery to McArthur Bridge except by way of Chouteau Avenue.

Smyser further testified that on the occasion in question he did not continue east on Chouteau Avenue, as he customarily did, but made a right turn onto California Avenue, intending to go south on California to Caroline Street to pick up his son Edward. Caroline Street runs east and west and is four or five blocks south of Chouteau Avenue. The Scanlon home on Caroline Street is located about one block east of California Avenue. Smyser further testified:

"Q. * * * Now, I will ask you, Mr. Smyser, did you have any load on your truck that had to be delivered or was destined to be delivered or picked up at any place south of Chouteau Avenue? A. No, sir.

"Q. Did you have any instructions or business to perform for the McBride Express Company that would require you to get off Chouteau Avenue and turn south on California? A. No, sir.

"Q. Did you have any other purpose in mind in doing that except to pick up your son? A. No, sir."

The collision with plaintiff occurred while Smyser was making a left turn into Caroline Street.

■ Liability in this case can only be imposed in the event it can be said that Smyser was, at the time of the accident, acting within the scope of his employment. An act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incident to a service on account of which the servant is employed.

The solution of the problem presented is not merely a matter of measuring the distance, the time, or the direction of the departure from what may be called the path of authorized conduct. Such circumstances may guide the judgment, but will not be suffered to control it aside from other circumstances which may characterize the intent of the transaction.

■ A servant may in certain instances deviate from the most direct or authorized route and still be in the master's service. Thus it may be that one turns aside to avoid heavy traffic, or to seek a smoother route. There may be parallel routes leading in the direction of his ultimate destination, either of which could be said to be within his sphere of service, on the theory that it might be reasonably expected that he would, in the exercise of his best judgment, choose either while in the pursuit of his master's business; or he might turn aside to attend to necessary personal wants which are considered incidental to his employment. But any turning aside from the designated or customary route, where the sole motive is self interest, unmixed with any intent to serve the master, separates the servant from the master's service, regardless of the extent of the deviation. Any other rule would lead to inconsistencies and ultimate confusion in the law.

■ Smyser, defendant's servant, while making the journey to the Caroline Street address to pick up his son, was performing no service for his master. He was not within his contemplated sphere of service at the time, nor performing an act which could be said to be incidental to his employment. His deviation was not made to facilitate the movement of the freight he was employed to haul. His intent was to serve a private purpose. As a matter of law, Smyser was not within the scope of his employment when the collision occurred. Brown v. Moore, Mo.Sup., 248 S.W.2d 553; Ursch v. Heier, 210 Mo.App. 129, 241 S.W. 439; Anderson v. Nagel, 214 Mo.App. 134, 259 S.W. 858; Stone v.

Reed, Mo.App., 247 S.W.2d 325; Humphrey v. Hogan, Mo.App., 104 S.W.2d 767.

The trial court should have sustained defendant's motion for a directed verdict filed at the close of the whole case. The judgment is reversed.

BENNICK, J., and HOLMAN, Special Judge, concur.