Mario ARES, Appellant,

v.

Richard OWENS, Defendant,

and

Gene Preston, partners et al., d/b/a Preston Refrigeration Company, Respondent.

No. 24447.

Kansas City Court of Appeals.

Missouri.

June 6, 1966.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 1966.

Application to Transfer Denied Nov. 14, 1966.

C. William Garver, Kansas City, for appellant.

Albert Thomson, Kansas City, Linde, Thomson, Vandyke, Fairchild & Langworthy, Kansas City, of counsel, for respondent Preston.

SPERRY, Commissioner.

This is a suit brought by plaintiff against defendants, Richard Owens and his employers, Gene Preston, a partner, d/b/a Preston Refrigeration Company, hereafter called Preston. The suit was for damages sustained by plaintiff when he was injured while operating his automobile southward on Troost Avenue in Kansas City, Missouri, at or near its intersection with 81st Terrace by Mr. Owens, who went to sleep at the wheel of his automobile. Mr. Owens was operating his own automobile. Trial to a jury resulted in a verdict for plaintiff against both Owens and Preston in the sum of $1500.00. Upon motion, the verdict against Preston was, by the court, set aside and judgment for defendant Preston was entered. The appeal is as to Preston, alone.

This casualty occurred November 13, 1961, in the manner above stated. Mr. Owens was at that time a regular employee of Preston. He was subject to call for duty at all times. He stated that his employment consisted of erecting, testing and putting into operation industrial refrigeration equipment, that being the business in which Preston was engaged; that, on Saturday, November 11, 1961, he worked all day and

until late at night or Sunday morning, at Williams Meat Company; that, when he arrived home, at 9312 McGee Street, in Kansas City, his wife was suffering labor pains; that he was up all day and all night, until he eventually took her to Baptist Memorial Hospital, (located at 6600 Rockhill Road, bounded on its east side by Troost Avenue, the parking lot opening on both streets); that his wife gave birth to twin boys, at about 6:00 o'clock Monday morning, November 13th; that he then drove to the Preston shop to get his pay check and to ask for the day off; that he was given the day off; that he then went to Williams Meat Company, where he remained for some time. He stated that, while at the shop where he received his pay check Mr. Pack, the bookkeeper, asked him if he would deliver pay checks to Donald Ray and another employee of Preston, who were working at the Country Club Dairy at 56th and Troost, when he went to see his wife at the hospital; that he agreed to do so; that he drove to his home, arriving at about 3:00 o'clock p. m.; that he left his home at about 7:00 o'clock p. m. to visit his wife at Baptist Memorial Hospital; that, after visiting her, he left the hospital at 8:30 o'clock p. m., driving from the parking lot east onto Troost, thence north 10 blocks to Country Club Dairy, where he sought to deliver the pay checks but could not do so because the men were not there. (It was shown that 9312 McGee Street, where Owens lived, is 300 east from Main Street; that Rockhill and Holmes, at 6600 south, is 700 east of main; and that Troost is 1100 east.) He then drove south on Troost, past Baptist Hospital to 81st Terrace, where the accident occurred. Owens delivered the checks to the employees at Country Club Dairy the following day.

Owens stated that, had he delivered the checks on his way home or to the hospital, from the shop, it would not have been on his direct route but would not have required a very great deviation. He stated to the effect that the nearest, most direct and least traffic congested route from Baptist Hospital to his home, at 9312 McGee, would have been to drive west, out of the hospital parking lot, onto Rockhill, thence south on Holmes, instead of east onto Troost and then south. He stated that he left his home on Monday night, primarily, to visit his wife; that he left the hospital at about 8:30 o'clock p. m.; that he drove north on Troost, from the hospital, 10 blocks, approximately a mile, solely for the purpose of delivering the checks; and that, when he left the Country Club Dairy, he intended to drive south to 89th, on Troost, thence west and south to his home, but that the accident occurred at 81st Terrace.

The evidence was to the effect that Preston furnished Owens an automobile to drive on its business; that he kept and garaged the company car at his home so that he would have it each morning to use in Preston's service; that that automobile was disabled and was in a repair shop at the times herein mentioned; and that he was then operating his own automobile in its stead.

There was testimony to the effect that, when some of Preston's employees were working on a job at some distance from the office, it was Preston's usage and custom to have some other employee deliver their pay checks to them on the job, if reasonably convenient, or that such employees come to the office and pick up such checks, or that same be mailed to them; that all three methods were followed; and that it was within the authority and discretion of Mr. Pack to request Mr. Owens to deliver the checks in this instance.

█ In considering the point presented, that is, whether the court could properly set aside the jury verdict in favor of plaintiff against Preston, and enter a judgment in favor of Preston, we must determine whether there is substantial competent evidence in the record that would have supported and did support the jury verdict. If there is, then the judgment appealed from was erroneously entered and it must be reversed. In considering the facts in evi-

dence, in this connection, all that are favorable to plaintiff's theory of recovery will be accepted as true, those unfavorable will be rejected, and all reasonable inferences, based on the evidence, favorable to plaintiff, will be indulged.

Viewing the evidence under the above mentioned rule, the jury could reasonably have found that Mr. Owens was not a volunteer in delivering the pay checks but was doing so because he had been requested by Preston's authorized agent that he do so; that, being a full time employee, on call day and night, and being customarily furnished with an automobile to be used in Preston's service, (although he was temporarily using his own vehicle), Owens owed a duty to comply with Mr. Pack's request; and that in doing so, he was within the scope of his employment. Therefore, if this casualty had occurred while Owens was proceeding from the shop, or from Williams meat plant, toward the Country Club Dairy, Preston would be liable. This is true even though Owens also intended going to his home or to the hospital after that mission was completed.

In Foster v. Campbell, 355 Mo. 349, 196 S.W.2d 147, 150, the court said:

"It may not be said then that the evidence shows as a matter of law that the trip to West Plains was solely upon the wife's separate business. If the trip was for the mixed or double purpose of her business and the business of her husband as well, and there was no material deviation from those purposes, it may not be said that she was not engaged upon her husband's business when she was returning home, after having sold her produce and purchased feed, with the gasoline which she had procured at his request. 42 C.J., § 867, p. 1107; Tutie v. Kennedy, Mo.App., 272 S.W. 117, 123; Cable v. Johnson, Mo.App., 63 S.W.2d 433, 435. 'An act may be within the scope of employment, although done in part to serve the purposes of the servant or of a third person. * * * *The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment.'* 1 Restatement, Agency, Sec. 236 and comment pp. 530, 531." (Italics supplied.)

And this further comment appears in Restatement, Agency 2d, Sec. 236, pages 523–524:

"If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act otherwise is within the service,".

■ Under the evidence, the jury could have found that, but for delivering the checks, Owens would have returned directly to his home from the hospital, at 8:30 p. m., by the most direct and least congested route, that is, south on Holmes, thence west on 89th to McGee, thence south to 9312, the location of his residence. That is a reasonable inference to be drawn from the evidence. Therefore, the jury could well have found that, but for the business of Preston, Owens would not have been involved in the accident, which occurred after Owens had fully completed his personal mission of visiting his wife. Thereafter, he set out on an entirely separate mission, solely for the benefit of Preston. He drove east some distance to Troost, thence north 10 blocks, thence south on Troost, to the 6600 block. Instead of leaving Troost at that point and travelling to Holmes, thence south, he continued on Troost to 81st Terrace where the accident occurred. He had reasonable latitude in choosing the route he would follow from Country Club Dairy to his home. He had deviated from the course he would have followed to reach his home, and he had not yet returned to a point on the direct route to his home after the deviation (if, indeed, that is material here, which point we do not reach). He was within the scope of his employment. He was required to garage Preston's car at his home, so as to have it available at all times to use

**36**

in Preston's service. At this time he was using his own car instead of the Preston car just as he had previously used Preston's car. In Silent Automatic Sales Corporation v. Stayton, 8 Cir., 45 F.2d 471, 474, the court said:

"In the case at bar the status of the truck does not rest solely upon the words and insignia painted upon its sides. There is no dispute as to the ownership of the car, nor that it was used in the business of appellant. The fact that ownership was in Smith, an employee, instead of in appellant, cannot avail the latter. Yelloway, Inc. v. Hawkins (C. C.A. 8) 38 F.(2d) 731. The crucial question upon this phase of the controversy is whether the employee-driver was then and there engaged in the line of his duty, and within the scope of his employment. Upon this point there is no categorical contradiction. The issue must be resolved upon the undisputed facts as outlined above.

"The great weight of reason and authority is to the effect that where an employee is returning from work, with the consent and by authority of the employer, in a vehicle owned or used in the business of the employer, he is acting within the scope of his employment.

"'Where a master places at the disposal of his servant an automobile to be used by the servant in going to and from his work, the transportation is beneficial to both, and the relation of master and servant continues while the automobile is used for such purpose.'"

A similar result was reached in O'Hare v. Justin T. Flint Laundry & Dry Cleaning Co. et al., Mo.App., 170 S.W.2d 95, 98.

The action of the trial court in setting aside the jury verdict and entering judgment for Preston was erroneous. The judgment is reversed and the cause is remanded with directions to enter judgment for plaintiff in accordance with the verdict of the jury.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court.

HOWARD and BLAIR, JJ., concur.

CROSS, P. J., not participating.